IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| WILLIS WEST,              :<br>                                      :<br>        Plaintiff,            :<br>                                      :<br>v.                                  :<br>                                      :<br>SOUTHERN AG CARRIERS, INC.,  :<br>                                      :<br>        Defendant.          :<br>                                      : | CASE NO.: 1:16-CV-00134 (WLS) |

**ORDER**

Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 31). For the following reasons, Defendant's Motion for Summary Judgment is **DENIED-IN-PART** and **GRANTED-IN-PART**.

**I.     PROCEDURAL HISTORY**

Plaintiff Willis West filed suit on July 26, 2016 requesting compensation and other relief under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219 (1988).  (Doc. 1.) Defendant Southern AG Carriers, Inc. ("SouthernAg") filed a Motion for Summary Judgment on November 17, 2017.  (Doc. 31.)  Plaintiff responded on December 18, 2017.  (Doc. 32.) After receiving two extensions, Defendant timely replied on January 29, 2018.  (Doc. 36.) Then, on April 9, 2018, Defendant requested leave to file a supplemental brief and authority based on *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018), decided on April 2, 2018. (Doc. 38.)  The Court granted Defendant's request for leave and ordered the Parties to file a supplemental brief and response.  (Doc. 40.)  The Parties complied.  (*See* Docs. 44 & 45.) Accordingly, Defendant's Motion for Summary Judgment (Doc. 31) is ripe for review.  *See* M.D. Ga. L.R. 7.3.1(A).

**II.    SUMMARY JUDGMENT STANDARD**

    **A.     Federal Rule of Civil Procedure 56**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

1

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 F. App'x 842, 846 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). " 'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.' " *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. After the movant has met his burden, the Court must then determine "whether the evidence [submitted by Plaintiff] presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted). The nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. While a Plaintiff can use his affidavit to meet this burden, Fed. R. Civ. P. 56(c)(4), the affidavit must "designate 'specific facts showing that there is a genuine issue for trial,' " and "he may not merely rest on his pleadings." *Graham*, 193 F.3d at, 1282. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Vicks v. Knight*, 380 F. App'x 847, 851 (11th Cir. May 26, 2010) (citation omitted). To avoid summary judgment, the non-movant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294

(11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form.").

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587-88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### A. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Defendant properly filed a summary judgment motion with a statement of undisputed material facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. *See* Docs. 31 & 31-2. Plaintiff then filed a response to Defendant's statement of material facts. *See* Doc. 32-1. Having established the applicable standards, the Court will proceed to the facts.

### III.     **RELEVANT FACTUAL BACKGROUND**

The following facts are derived from the Complaint (Doc. 1); Defendant's Answer (Doc. 4); Defendant's Statement of undisputed material facts (Doc. 31-2); Plaintiff's Response to Defendant's Statement of undisputed material facts and Plaintiff's Statement of Undisputed Facts (Doc. 32-1); and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most

favorable to West as the nonmoving party. *See* Fed. R. Civ. P. 56; *Matsushita*, 475 U.S. at 587-88.

SouthernAg is "an asset based trucking company dedicated to transporting full-load agricultural products between twenty-three states." (Doc. 31-2 ¶ 2.) SouthernAg is headquartered in Albany, GA but has offices in other locations. *Id.* ¶ 3. SouthernAg's Albany location has approximately 150 employees. *Id.* ¶ 4. SouthernAg employees are organized into four primary departments: Administrative, Safety/Recruiting, Operations, and Maintenance. *Id.* ¶ 5. West was hired by SouthernAg on or about September 21, 2009 as a Fuel Island Inspector in the Maintenance Department. (Docs. 31-2 ¶¶ 12-13 & 32-1 at 5 ¶ 2.) Plaintiff assumed the duties of Breakdown Coordinator on August 16, 2013 and, after his ninety-day performance review, was formally promoted to Breakdown Coordinator effective November 16, 2013.[1] (Doc. 32-1 at 3 ¶ 14.) Until his employment ended with SouthernAg in 2015, West worked in the Maintenance Department. (Docs. 31-2 ¶ 11 & 32-1 at 5 ¶ 2.)

"SouthernAg's fleet has approximately 400 over the road trucks and trailers that are operated by SouthernAg employees or independent contractor drivers." (Doc. 31-2 ¶ 10.) As Breakdown Coordinator, West was responsible for taking and placing phone calls to have trucks repaired that most often had broken down or were sometimes involved in an accident. (Docs. 32-1 at 3 ¶¶ 15-16 & Doc. 31-2 ¶¶ 15-16.) "The Breakdown Coordinator position called for Mr. West to quickly resolve and monitor complaints of broken down equipment, remotely, by primarily using a telephone and email." (Doc. 31-2 ¶ 18.) The Breakdown Coordinator was an hourly position. (Doc. 32-1 at 5 ¶ 5.) Once a month, for one week, West worked "on call" weeknights and on the weekend from his home where he used a company-provided cell phone to address truck repairs. (Docs. 32-1 at 8 ¶ 26 & 31-5 at 20:15-22:20.)[2] Whenever West worked on call, he was paid for six extra hours for the week, even though West asserts that he worked more than six hours during the weeks when he was on call. *Id.* at 8 ¶¶ 27-34.

---

[1] This is in contrast to the allegations of the Complaint which state that West performed the duties of Breakdown Coordinator from September 2012 to September 2015. (Doc. 1 ¶ 2.) The Court thus notes that the relevant time period is 2013 to 2015, not 2012 to 2015.

[2] According to John Paul, an Assistant Director of Maintenance at SouthernAg, "'[o]n-call' hours were normally from 12:00 a.m. – 7:00 a.m., seven days per week." (Doc. 31-4 ¶ 18.)

West alleges that he complained to SouthernAg about his dissatisfaction with his compensation and then provided his two weeks' notice of resignation on September 27, 2015. (Docs. 31-2 ¶ 21, 32-1 at 9 ¶ 37, 1 ¶ 22.) "SouthernAg accepted Mr. West's resignation effective September 28, 2015 but allowed him to remain on its payroll and benefits plan through October 8, 2015." (Doc. 31-2 ¶ 22.) West began performing similar work for Western Flyer Express in a salaried position, which is exempted from the FLSA. (Doc. 32-1 at 4-5 ¶¶ 23-28, 38.) SouthernAg has since salaried the Breakdown Coordinator position. *Id.* at 8 ¶ 35.

SouthernAg moves for summary judgment arguing that West was exempted from the FLSA because "his core job duties and responsibilities directly affected the *safety* of operation of motor vehicles on public highways in transportation in interstate or foreign commerce" pursuant to the Motor Carrier Act ("MCA") and the Interstate Commerce Commission's regulations. (Doc. 31 at 1.) SouthernAg also argues that it should be granted summary judgment on West's retaliation claim because it "took no adverse employment action against Plaintiff after the protected activity and before Plaintiff gave notice of his voluntary resignation." *Id.* at 2.

West responds that he does not meet the requirements for exemption and that SouthernAg has not provided sufficient evidence that West was exempt from the FLSA. West also responds that SouthernAg's immediate termination of West's employment upon West complaining about his pay and submitting a two weeks' notice of resignation was retaliation in violation of the FLSA. (Doc. 32 at 16.)

IV. **DISCUSSION**

**A. Exemption from the FLSA**

Under the FLSA, "[n]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(2), (a)(2)(C). But, employees whose maximum work hours may be regulated by the Secretary of Transportation under the MCA are exempt from this provision of the FLSA. *Spires v. Ben Hill Cty.*, 980 F.2d

5

683, 686 (11th Cir. 1993); 29 U.S.C. 213(b)(1). Employees who are exempted from the FLSA by the MCA are those who "are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles." *Spires*, 980 F.2d at 686 (citing 49 U.S.C. § 3102(b)(1)). Specifically, the Department of Labor ("DOL") has regulated that the exemption applies "to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce . . . ." 29 CFR 782.2 (b)(2). A court must consider as controlling "the character of the activities involved" in the employee's work, but his job title is not controlling. *Id.* The general rule is that when an employee is "called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this section, he comes within the exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3). But "where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties." *Id.*

The Parties appear to agree that SouthernAg is a motor carrier and that West's job duties' caused him to be engaged in interstate commerce. *See* Doc. 31-2 ¶¶ 2, 10; Doc. 32-1 at 1-2 ¶¶ 2, 10.[3] The only apparent dispute is whether West fell into the category of "mechanic"[4] and whether his work "directly affect[ed] the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce . . . ." 29 CFR 782.2 (b)(2); Doc. 32 at 5-10; Doc. 31-1 at 9-10; Doc. 36 at 1-3.

---

[3] The Court notes that although SouthernAg argues that it is a motor carrier and that West was involved in the interstate transportation of goods (Doc. 31-1 at 8), West offered no argument in opposition to these issues. *See* Doc. 32. Regardless, the Court finds that SouthernAg has sufficiently established that it was a motor carrier and that West was involved in interstate commerce. *See* 49 U.S.C. § 13102(14); 29 C.F.R. § 782.7

[4] Although Plaintiff presented facts showing that his authority and discretion was limited (Doc. 32 at 4 ¶ 19), Defendant has not argued that any other exemptions apply, such as the administrative exemption which requires that the employee exercise discretion and independent judgment. 29 C.F.R. § 541.200(a)(1-3).

6

A "mechanic" is an employee "whose duty it is to keep motor vehicles operated in interstate or foreign commerce by his employer in a good and safe working condition." 29 C.F.R. § 782.6(a). Such an employee is exempt if he performs certain types of work "directly affecting 'safety of operation': the inspection, repair, adjustment, and maintenance for safe operation of" the parts of a vehicle, including changing and repairing tires. 29 C.F.R. 782.6(a). It is important that the employee does work making him "directly responsible for creating or maintaining physical conditions essential to the safety of the vehicles on the highways" and "which prevent[s] the vehicles from becoming potential hazards to highway safety and thus aid in the prevention of accidents." *Id.* Thus, a court must determine "whether there is a clear enough answer about what tasks Plaintiff[] performed to enable the Court to decide whether, as a matter of law, [he] [is] exempted from the FLSA." *Wade v. Werner Trucking Co.*, No. 2:10-cv-270, 2014 U.S. Dist. LEXIS 35653, at *6 (S.D. Ohio Mar. 18, 2014).

A review of the case law and the MCA indicates that dispatchers are not typically exempt.[5] The MCA specifically states that dispatchers who assign vehicles, call drivers to duty, and permit vehicles to depart "engage in no activities which directly affect the safety of operation of motor vehicles in interstate or foreign commerce." 29 C.F.R. 782.6(c)(2) (citation omitted). But, dispatchers whose work directly affects safety on public highways should be considered exempt. In *McIntyre*, the plaintiff's job duties as a truck dispatcher included "calling mobile mechanics for stranded [] truckers when mechanical breakdowns and flat tires stranded the drivers' vehicles or impeded their safe operation," assigning drivers to trucks based on his assessment of vehicle safety, and checking vehicles to ensure their safety. *McIntyre v. FLX of Miami, Inc.*, No. 08-20030-CIV-O'SULLIVAN, 2008 U.S. Dist. LEXIS 85582, at *18 (S.D. Fla. Oct. 8, 2008). The court found that based on plaintiff's job responsibilities, he "was engaged in safety-affecting activities" and not entitled to overtime compensation under the FLSA. *Id.* at *18-19. Similarly in *Wirtz*, the court found that dispatchers were among the employees who were engaged in the requisite safety activities and thus were exempt, as opposed to office

---

[5] 29 C.F.R. § 782.2 ("Generally, dispatching is not considered work that affects the safety of motor vehicle operation."); 29 C.F.R. § 782.2(f) (citing cases of employee categories that are not exempt, including where a clerk and a manager performed some dispatching); *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 2010 U.S. Dist. LEXIS 5132 (ND. Cal Jan. 22, 2010) (denying summary judgment to defendant in dispatcher's action alleging violation of overtime laws).

7

employees. *Wirtz v. Robinson & Stephens, Inc.*, No. 11,665., 1972 U.S. Dist. LEXIS 13390, at *14 (N.D. Ga. June 6, 1972)[6].

West's job duties as Breakdown Coordinator required that, among other things, he "coordinate[] and direct[] service solutions for Interstate Transportations equipment that has failed over the road;" "troubleshoot all types of electrical repairs;"[7] and "diagnose[] problems on engine, brakes, …, etc." (Doc. 31-3 at 56.)[8] West testified that when a driver called, West would ask questions to determine what the problem was with the truck and how it could best be repaired. (Doc. 32-2 at 39:41-42:7.) West testified that he would ask questions to determine whether a call was safety-related, like a car accident, in which case he would have the appropriate safety employee get involved. *Id.* West also testified that most of his calls were about tire blowouts, and that most of the time drivers were already safely at the side of the road rather than posing a hazard to highway traffic. *Id.* at 42:18-45-8. Although West clearly took on more safety-related duties than a typical dispatcher, it is not clear that he should be considered a "mechanic" under the MCA or that by calling vendors to repair trucks he was directly affecting safety. Plaintiff asserts that he had little-to-no experience or training as a mechanic, that he never physically inspected or repaired the trucks,[9] and that he was essentially responsible for making sure that repairs were done under budget by a mechanic or similar person. (Docs. 32 at 3 ¶¶ 16-17 & 32-5 at 3 ¶ 16.)

In certain other cases where the plaintiff performed no repairs himself, courts have found that such an employee did not qualify as a mechanic under the regulations. *Billingslea v. S. Freight, Inc.*, 699 F. Supp. 2d 1369, 1379 (N.D. Ga. 2010) ("The fact that Plaintiff had the duty to inspect trucks and trailers for maintenance issues like flat tires or broken taillights and to report such problems to the employees actually tasked with fixing them does not mean that

---

[6] In *Wirtz*, however, the court did not explain how or why dispatchers were exempt. The court did not analyze dispatchers under the "mechanic" category under the MCA.

[7] West testifies that he did "not actually" perform this function, as it was difficult to do over the phone, but that the driver would have already taken his truck to a service or repair person who would diagnose the problem with the electrical system. (Doc. 32-2 at 50:24-51:25.)

[8] The Court notes that the Truck Mechanic job description contains similar job functions, including "troubleshoots and performs all types of electrical repairs;" and "diagnose[] problems on engine, brakes, …, etc." *Id.* at 55.

[9] West admits that he worked for SouthernAg as a "trailer mechanic" for about one month, and that during this time, he mainly repaired holes in the trailer walls and cleaned them. (Doc. 31-5 at 29:21-30:4.)

8

Plaintiff qualified as a 'mechanic' as defined by the regulations."); *In re Circle City Transp., Inc.*, No. 08-11858-DHW, 2011 Bankr. LEXIS 4218, at *8-9 (Bankr. M.D. Ala. Oct. 31, 2011) (finding that the exemption did not apply to a security guard who occasionally changed tires or bulbs in vehicles). Another case specifically considered the finding in *McIntyre* and found that the MCA exemption is not so broad as to exempt anyone who tangentially affects highway safety. *Wade*, 2014 U.S. Dist. LEXIS 35653, at *84-85. The court in *Wade* specifically found that to qualify as a mechanic, one "must physically repair trucks so as to keep them in safe working condition or one must, as a supervisor to a mechanic, plan such work, immediately direct it, and check the proper performance of a person engaged in this work." *Id.* at *87-88 (citing 29 C.F.R. §782.6 (a, b)). Although Defendant argues that West was a "mechanic on-call" and that he "directed" repairs (Docs. 31-1 at 9-10 & 36 at 1-3), the regulations only state that a mechanic and a mechanic's supervisor can fall into the mechanic exemption. *See* 29 CFR 782.6 (b) ("A supervisory employee who plans and immediately directs and checks the proper performance of this class of work [that of a mechanic] may come within the exemption as a partial-duty mechanic.").

The Court does find that West had some effect on highway safety because he was responsible for coordinating repairs to trucks that had been in an accident or had broken down, often at the side of a highway. *See R+L Carriers, Inc.*, 690 F. Supp. 2d at 1008 (finding that plaintiff was not exempt in part because "if a driver experienced a mechanical malfunction on the road, the driver would call the 'Breakdown Department,' which, in turn, would provide Plaintiff with information concerning towing the truck back"). But, the law is not clear that someone who calls mechanics to repair trucks falls into the MCA exemption as a mechanic.

Defendant argues in its supplemental brief that a recent U.S. Supreme Court decision, *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018), "rejected the application of a narrow construction of FLSA exemptions" in holding that car "service advisors" are exempt from FLSA. (Doc. 44 at 1.) Though creative, Defendant's argument is unavailing. In *Encino*, the Court analyzed a different subsection of the FLSA which exempted "any salesman, partsman, or mechanic primarily engaged in selling *or* servicing automobiles, trucks, or farm implements."

138 S. Ct. at 1136 (quoting 29 U. S. C. §213(b)(10)(A))[10] (emphasis added).  Key to the Court's holding was that the plain language of the statute was broad and included salesmen who *either* sold *or* serviced cars, and the Court found that service advisors did both.  *Id.* at 1137.  The statute at issue in *Encino* did not define the terms salesman or servicing, and it used the disjunctive "or" to indicate that a broad interpretation was appropriate.  *Id.* at 1137, 1140-41 ("[A] narrow distributive phrasing is an unnatural fit here because the entire exemption bespeaks breadth, starting with "any" and using the disjunctive "or" three times.")  Moreover, the Court found that the exemption had "long been understood to cover service advisors[,]" and that the federal courts had long since rejected the view that such employees were not exempt.  *Id.* at 1138.  Although the U.S. Supreme Court did hold that FLSA exemptions are to be given a fair reading, rather than a narrow interpretation[11] (*id.* at 1142), a fair reading of the statute here does not indicate that West was exempt from FLSA as a mechanic.  The job duties of the service advisors were to "meet customers; listen to their concerns about their cars; suggest repair and maintenance services; sell new accessories or replacement parts; record service orders; follow up with customers as the services are performed . . .; and explain the repair and maintenance work when customers return for their vehicles."  *Id.* at 1139.  Notably, despite the similarities in job functions for service advisors in *Encino* and Breakdown Coordinators in this case, the defendant never argued and the courts never considered that the service advisors in *Encino* should fall under the exemption as "mechanics."  This Court finds the omission of that analysis insightful for this case.

As Defendant argues, courts must "interpret the scope of § 204 of the Motor Carrier Act in accordance with the purposes of the Motor Carrier Act and the regulations issued pursuant to it."  (Doc. 44 at 5) (quoting *Levinson*, 330 U.S. 649, 677 (1947)).  The regulations at issue here specifically state that *only* drivers, driver's helpers, loaders, and mechanics qualify for the exemption and that "no other classes of employees employed by such carriers perform

---

[10] Plaintiff is correct that Defendant has not argued that this subsection applies to this case (Doc. 44), and in addition to the fact that this section appears to apply only to automobile dealerships, the Court would not allow such an argument at this late stage in any event.

[11] Because employers bear the burden of proving that an exemption applies by a preponderance of the evidence, courts have held that courts must "construe FLSA exemptions narrowly against the employer." *Abel v. S. Shuttle Servs.*, 631 F.3d 1210, 1212 (11th Cir. 2011); *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009).

10

duties directly affecting such 'safety of operation.'" 29 C.F.R. § 782.2(b)(1)). Although the MCA does not define mechanic, the regulations define a mechanic as one who performs work "directly affecting 'safety of operation': the inspection, repair, adjustment, and maintenance for safe operation of" the parts of a vehicle. 29 C.F.R. 782.6(a). This is consistent with the ordinary meaning of the term mechanic as one who repairs automobiles. *See, e.g., Shultz v. La. Trailer Sales, Inc.*, 428 F.2d 61, 65 n.7 (5th Cir. 1970); *United States v. Cent. Motor Lines, Inc.*, 338 F. Supp. 532, 538 (W.D.N.C. 1971). Moreover, courts have not consistently considered persons who perform functions like that of a Breakdown Coordinator as mechanics – this issue is unsettled. Under these circumstances, the Court finds no reason to depart from the regulations and is reluctant to find that someone who had little-to-no mechanic's experience and performed no inspections, repairs, or servicing on vehicles is nonetheless exempted as a mechanic under the MCA. Because the rules on their face do not appear to exempt as a mechanic someone who neither repairs vehicles nor plans, directs, *and* checks the proper performance of such repairs, Plaintiff has identified a genuine dispute of material fact as to whether he was a "mechanic" under the MCA when he worked as a Breakdown Coordinator. As courts before, "the Court finds there is insufficient record evidence upon which it can decide, as a matter of law, whether the MCA Exemption applies." *Smith v. Schwan's Home Serv.*, No. 2:13-cv-00231-JAW, 2014 U.S. Dist. LEXIS 165883, at *105 (D. Me. Nov. 25, 2014). Thus, summary judgment is not appropriate and is therefore **DENIED** on the asserted basis that West was exempted from the FLSA.

### B. Compensation for On-call Time or Hours Worked On Call

#### 1. Compensation for All On-call Time

West argues that after becoming Breakdown Coordinator, he was on call one week per month in addition to his regular work hours and, thus, is owed overtime compensation for his on-call time or, at the least, actual hours worked while on call. (Docs. 32 at 10-14 & 32-1 at 8 ¶¶ 26-29.) SouthernAg argues that, at most, Plaintiff is only entitled to compensation for the time he actually worked while on call. (Doc. 31-1 at 11.) SouthernAg also argues that since Plaintiff was already compensated for six additional hours for each week he was on call, Plaintiff must show how many more hours he worked on call to justify additional compensation. *Id.* at 16.

11

> As to "on-call time," the FLSA states:
>
> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 CFR 785.17. The DOL has addressed on-call time at home, stating that such time "may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits." 29 CFR § 553.221(d). "Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable." *Id.* Thus, to determine whether West should be compensated for all on-call time, the Court must determine "whether the conditions placed on [West's] activities [we]re so restrictive that [West] [could] not use the time effectively for personal pursuits." *Spires*, 745 F. Supp. at 702.[12]

In *Spires*, this Court found that even though EMTs worked a considerable number of hours on call (eight in a twenty-four-hour period), the conditions placed on them "were not so restrictive so as to preclude them from effectively using the [on-call] time for personal pursuits." 745 F. Supp. at 702. Considering that the EMTs were able to have hobbies and other jobs during their on-call time, this Court found that "only the hours spent working while on-call are compensable." *Id.* Similarly, the Eleventh Circuit held that police detectives' on-call time was not compensable because the time "was not used predominantly for the employer's benefit." *Birdwell v. Gadsden*, 970 F.2d 802, 808 (11th Cir. 1992). Although West argues that *Birdwell* is inapplicable because it applies to a "special provision of the FLSA for law enforcement personnel," the Eleventh Circuit analyzed a variety of cases in reaching its

---

[12] West argues that the proper analysis is whether West was engaged to wait or waiting to be engaged (Doc. 32 at 10), and the Court will also employ that analysis where helpful. *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir. 1989) (explaining that "courts have fashioned the so-called 'waiting to be engaged' and 'homeworker's' doctrines" to more easily determine the type of compensation that non-traditional workers should receive under the FLSA).

12

holding. *See id.* at 809 (citing *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653 (10th Cir.1988) which found that van employees who were required to remain near company premises for eight to ten hours per day could not be compensated for this time because they could still pursue personal interests during this time). Other courts have reached similar conclusions. The Fifth Circuit has held that even though an employee was on-call throughout all of his off-duty time, had to report to the hospital within twenty minutes of being called in, and had no days off, his idle on-call time was not compensable. *Bright v. Hous. Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 676 (5th Cir. 1991). The Tenth Circuit has also held that where "the limitations were not so onerous that a reasonable factfinder would conclude that they were . . . precluded from effectively pursuing their personal pursuits," the on-call time was not compensable. *OTR Driver at Topeka Frito-Lay, Inc.'s Distribution Ctr. v. Frito-Lay, Inc.*, Case No. 91-4193-SAC, 1993 U.S. Dist. LEXIS 4468, at *22-23 (D. Kan. Mar. 5, 1993) (citation omitted). Likewise, another court has found that where "plaintiffs need not remain on work premises, are free to engage in personal matters during waiting time, and that the time spent during 'on call' periods is used mostly for the benefit of the employees," the employees are "'waiting to be engaged', not 'engaged to be waiting.'" *Norton v. Worthen Van Serv.*, No. C85-0069-B1, 1986 U.S. Dist. LEXIS 29402, at *7 (D. Wyo. Feb. 12, 1986) (citing *Handler v. Thrasher*, 191 F.2d 120 (10th Cir. 1951)).

Here, West testified that during on-call weeks, he would work his regular shift at work until 5:00 pm (if he did not work longer), and he would then go home where he would be completely free until 10:00 pm, when he went on call until 7:00am when he arrived at work the next morning. (Doc. 31-5 at 20:17-22:17.) He was also on call Saturday and Sunday of that week; according to SouthernAg, these on-call hours were also only at night.[13] *Id.* West testified that the number of calls per night varied, "maybe one, maybe two, maybe five." *Id.* at 23:12-19. The initial call from a driver would take about fifteen minutes for West to take down the information, and the time from that call until the repair was completed could last fifty to ninety minutes. *Id.* at 61:1-10. Although he was not required to, West chose to stay at home when he was on call. (Doc. 31-5 at 56:16-24.) While at home, West watched TV, slept,

---

[13] According to John Paul, an Assistant Director of Maintenance at SouthernAg, "'[o]n-call' hours were normally from 12:00 a.m. – 7:00 a.m., seven days per week." (Doc. 31-4 ¶ 18.)

13

and ate when he not on a work call, but he would generally not leave the house. *Id.* at 57:8-24. West has not asserted how many hours he worked and for which he is owed compensation, but he testified that he took notes while on call about any calls he received and filed those notes when he returned to work. (*Id.* at 35:4-36:13.)

A review of the facts of this case compared with the relevant case law and regulations leads this Court to conclude that West is not due compensation for his on-call time when he was not actually working. A key distinction between the cases are that in most cases where on-call time was found to be compensable, the employee was waiting or working at his place of work rather than at home. *See, e.g.*, *Cole v. Farm Fresh Poultry, Inc.,* 824 F.2d 923 (11th Cir.1987) (chicken processing plant was required to compensate employees for time they spent waiting while the assembly line was down and being repaired); *Chapman v. Grable Plumbing Co.,* No. 8:10-CV-1202-T-30AEP, 2011 WL 3269628, at *5 (M.D. Fla. Aug. 1, 2011) (denying summary judgment only on the issue of "waiting time" where plaintiff insisted that he was required to wait in his service van in the morning for his first service call of the day); *Smith v. Ideal Towing, LLC*, No. 1:16-CV-1359-TWT, 2017 U.S. Dist. LEXIS 187476, at *13 (N.D. Ga. Nov. 13, 2017) (finding that the plaintiffs "did not work from home" but "spent a significant portion of their day on the road towing cars."). The fact that West was on-call from home, while not conclusive, cuts against a finding that West was predominantly using the time for his employer's benefit.

Next, although West testified that he did not generally leave his house when he was on call, he presented no facts indicating that he was required to stay home or that he was restricted from pursing his personal interests at home. In a very similar case, a telephone dispatcher was required to be home from 5:00 pm to 8:00 am five nights a week, but the Fifth Circuit found that this time was not compensable because since the plaintiff could "visit friends, entertain guests, sleep, watch television, do the laundry, and babysit," she was using the time predominately for her own benefit. *Halferty,* 864 F.2d at 1189 (holding that Halferty was waiting to be engaged). In another case, the court found a plumber's on-call time not compensable where he testified that he "could eat dinner at home, watch tv, 'mill around the house,' and go to sleep." *Chapman*, 2011 U.S. Dist. LEXIS 83998, at *10-11. The court further noted that although the plaintiff "may have chosen to remain at home during this time, there

14

is nothing in the record to suggest that Defendant <u>required</u> [him] to stay at home," and his total time on call was not onerous, but was "at most, one full weekend a month." *Id.* at *11. Thus, these cases too cut against finding that West was engaged to wait, rather than waiting to be engaged, during his on-call time waiting for calls.

Another factor that courts consider is how much time an employee actually works when on-call. Where on-call employees can receive as many as twelve to thirteen calls a day, or any other number, such that they are "effectively precluded from using their on-call time for their own benefit," then their on-call time may be compensable. *Birdwell*, 970 F.2d at 809-10 (citation omitted); *Smith*, 2017 U.S. Dist. LEXIS 187476, at *11 (denying summary judgment for the defendants where the plaintiffs "produced evidence that they responded to so many calls throughout the day, as many as twelve to fifteen a day, that they could not actually use this time for their own benefit"). Although West testified that he could receive as many as five calls a night,[14] "it is clear that an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *Birdwell*, 970 F.2d at 810. West did not testify to facts indicating that his time was severely restricted. The initial call from a broken-down trucker would only take fifteen minutes, and West presented no evidence for this Court to conclude that he spent so much time working when on-call that he should be compensated for this time. *See Spires*, 745 F. Supp. at 702 (finding on-call time not compensable "even though plaintiffs submitted data indicating that each man worked greater than eight hours per 24 on-call period"). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Graham*, 193 F.3d at 1282. Like in *Birdwell*, West did not "testify that [he] could not use [his] time at home as [he] wished." *Birdwell*, 970 F.2d at 808. West did not assert that he "did not have long portions of uninterrupted leisure time." *Smith*, 2017 U.S. Dist. LEXIS 187476, at *14. In fact, "the general

---

[14] The vague statements provided in response to the Motion for Summary Judgment that West "worked the duration of the [on-call] time," "had a high volume of calls and worked steadily while on call" (Docs 32-1 at 8 ¶ 27 & 32 at 12) are contradicted by West's earlier sworn deposition testimony, and therefore, are not reliable. *See Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984). In fact, these assertions misconstrue West's testimony. (Doc. 32-2 at 22:14-20) (West testifying that he "steadily worke[d]" during his regular work shift, not his on-call time).

15

rule is that, although every on-call policy creates some imposition on the life of the employee subject to the terms thereof, such time will nonetheless rarely be compensable." *Chapman*, 2011 U.S. Dist. LEXIS 83998, at *8-9 (citation omitted). Even viewing the facts in the light most favorable to West, West has not presented sufficient evidence for one to reasonably conclude that "the conditions placed on [West's] activities [we]re so restrictive that [West] [could] not use the time effectively for personal pursuits." *Spires*, 745 F. Supp. at 702. Thus, summary judgment is **GRANTED** to SouthernAg on West's claim for compensation for all of West's on-call time.

### 2. Compensation for Hours Actually Worked On Call

SouthernAg next argues that it does not owe West any additional compensation because West has not shown how many hours he worked beyond the six hours for which he was already compensated by SouthernAg for each week on call. (Doc. 31-1 at 16.) West responds that because SouthernAg failed to track West's on-call work hours and West provided records of his on-call work, West "is entitled to introduce evidence at trial of his estimates of the actual hours he worked while on call." (Doc. 32 at 13-14.)

It is clear that employees who are not exempt from the FLSA must receive compensation at the rate of at least 1.5 times their regular rate of compensation for all hours worked over forty in a workweek. 29 U.S.C. § 207(a)(2). The Court has already found that a genuine issue of material fact exists as to whether West was exempt from the FLSA as a Breakdown Coordinator. *Supra* p. 9. Moreover, Plaintiff asserts, and Defendant does not dispute, that the hours Plaintiff worked on call were in addition to his regular full-time work. (Doc. 32-2 at 21:17-23:13; Doc. 32-4 at 20.) Both Parties agree that Plaintiff was only paid his regular hourly rate for six additional hours that he worked during his on-call weeks. (Docs. 32-2 at 26:3-8, 31-1 at 20, 31-4 ¶ 22.) Plaintiff asserts that he "was not paid time and one-half his regular rate of pay for all hours worked in excess of forty (40) within a work week during one or more weeks of employment." (Doc. 1 ¶ 10; Doc. 32-2 at 23:1-13 (testifying that his regular work shift was 7:00 am to 5:00 pm and that he sometimes worked extra hours).)[15] Plaintiff also asserts that during at least some of his on-call weeks, he worked more than six

---

[15] SouthernAg does not dispute these assertions.

16

on-call hours, for which he was not compensated. *See, e.g.*, Doc. 32-2 at 21:7-14; Doc. 32-1 at 8 ¶ 32.[16] The Court is satisfied that these assertions are sufficient to create a genuine dispute of material fact as to whether Plaintiff was fully compensated for his actual work hours over forty per week as Breakdown Coordinator. Although Plaintiff's evidence is not terribly strong, a reasonable juror taking the facts in Plaintiff's favor could find that Plaintiff is owed additional compensation. In similar cases, where the plaintiff asserted, and the evidence was consistent with his assertion, that the plaintiff worked more than forty hours per week for which he did not receive time and one-half of his regular rate of pay, the defendant's summary judgment motion was denied. *Billingslea*, 699 F. Supp. 2d 1369; *Swan v. Nick Grp., Inc.*, No. 1:11-cv-1713-WSD, 2013 U.S. Dist. LEXIS 130837, at *2-4 (N.D. Ga. Sep. 12, 2013) (denying summary judgment on FLSA claims of a dispatcher who alleged working at least five nights per week from 7:00 or 7:30 p.m. to 7:00 or 7:30 a.m.).

Moreover, Plaintiff has correctly argued that it is the defendant's obligation under FLSA to track an employee's work hours, and that an employee should not be denied owed wages simply because he does not have written proof of the hours he worked. (Doc. 23 at 13); *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 828 (11th Cir. 1988) ("It is firmly established where an employer has not kept adequate records of their employee's wages and hours as required by the FLSA, the employees will not be denied a recovery of back wages on the ground that their uncompensated work cannot be precisely determined."). "[I]n 'such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Walters v. Am. Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1300 (S.D. Fla. 2008) (citation omitted). Here, Plaintiff's evidence, though minimal, is sufficient for one to reasonably infer that he performed work for which he was not fully compensated. *See Swan*, 2013 U.S. Dist. LEXIS 130837 at *4, 12, 28 (denying summary judgment on the ground that the plaintiff did not establish that she worked more than forty hours per week where the plaintiff asserted that the defendant did not track her working hours); *cf. Walters,* 569 F. Supp. 2d at 1301 (granting

---

[16] SouthernAg also does not dispute this assertion, but merely argues that West has not provided evidence of his work hours when on call. (Doc. 32 at 16.)

17

summary judgment against plaintiffs who "failed to present any evidence whatsoever that they were [improperly] compensated"). Moreover, because Defendant has not argued otherwise and Plaintiff has presented sufficient evidence "from which a jury could find a 'willful' violation, the district court is 'required to await the finding of the jury about willfulness' . . . in the context of liquidated damages." *Swan*, No. 1:11-cv-1713-WSD, 2013 U.S. Dist. LEXIS 130837, at *33 (quoting *Davila*, 717 F.3d at 1186).[17] Accordingly, summary judgment is **DENIED** as to Plaintiff's request for overtime compensation for actual hours worked and liquidated damages. (Doc. 1 ¶¶ 13-20.)

### C. Retaliation against West

Plaintiff asserts that he was retaliated against when he was terminated after complaining about his compensation to SouthernAg. (Doc. 32 at 15.) SouthernAg counters that it did not terminate West, that West resigned, and that since SouthernAg paid West for two additional weeks, West suffered no adverse employment decision. (Doc. 31-2 at 18-19.)

Courts apply the McDonnell Douglas burden-shifting framework in analyzing retaliation claims under FLSA. *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1133 (N.D. Ga. 2004) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case by demonstrating (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). The burden then shifts to the defendant to produce a legitimate, non-retaliatory reason for the alleged adverse employment action. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988). If the defendant meets this burden, then the plaintiff must show that the defendant's stated reasons were pretext for retaliation. *Id.*

Here, both Parties appear to concede for purposes of this motion that West engaged in statutorily protected activity if he complained about his compensation orally. (Docs. 31-1

---

[17] *See also id.* at *31-32 (explaining that an employer's decision not to record an employee's working hours could indicate a willful violation of FLSA) (citing *Davila v. Menendez*, 717 F.3d 1179, 1185 (11th Cir. 2013)).

at 17 & 32-1 at 9 ¶ 37.)[18] But an employer's action is only actionable if "a reasonable employee would have found the challenged action materially adverse," such that he would have been dissuaded from "making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). "[A] mere *de minimis* inconvenience, when viewed objectively, is not actionable." *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp. 2d 1282, 1339 (N.D. Ga. 2006) (citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001)). The employment action must be materially adverse as viewed objectively by "a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Burlington Northern*, 548 U.S. at 71 (citation omitted).

The only challenged employment action is SouthernAg's immediate termination of West's employment upon receiving West's two weeks' notice of resignation. (Doc. 32 at 15.) The Parties agree that West still received his regular pay and benefits from SouthernAg for the next two weeks. (Docs. 31-1 at 18-19 & 32-1 at 4 ¶ 22.) The notice also stated that West had already accepted another job with higher pay. (Doc. 31-7.) West has presented no facts indicating that a termination under these circumstances was materially adverse or would dissuade a reasonable person under the same circumstances from complaining about discrimination – in fact, West has not articulated how such a termination harmed him at all.[19] Thus, the Court finds that West has not shown that he suffered an adverse employment decision.

Moreover, SouthernAg provided a legitimate, non-discriminatory reason for terminating West upon receiving his two-weeks' notice, which West has not shown was pretext for retaliation. Aside from the fact that the notice stated it was "[e]ffective immediately," SouthernAg also argues that it was justified in terminating West's employment immediately because West had accepted employment "with a company that competes directly with SouthernAg for business in the trucking industry." (Doc. 31-1 at 18-19.).[20] SouthernAg's

---

[18] SouthernAg argues that the two weeks' notice does not reference FLSA claims, and the Court finds that because it only mentions West wanting a raise, it is not clear that this letter sufficiently addresses FLSA claims. (Docs. 31-1 at 17 & 31-7.)

[19] "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm," and specifically, a "significant" harm. *Burlington Northern*, 548 U.S. at 67-68.

[20] Plaintiff's argument that there is no evidence that the companies "provided the exact same services in the same region of the country" is insufficient. (Doc. 32 at 15.) West testified that he has "the same duties" that

justifications combined with the fact that SouthernAg paid and provided benefits to West for two weeks (effectively honoring West's two weeks' resignation) indicate a lack of intent to retaliate against West. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (explaining that the "proffered reason [must be] one that might motivate a reasonable employer" to make the same decision). West has not otherwise shown that the "'proffered reason is unworthy of credence or . . . that retaliation more than likely motivated [SouthernAg] to fire [him].'" *Feise v. N. Broward Hosp. Dist.*, 683 F. App'x 746, 752 (11th Cir. 2017) (citation omitted). In sum, "Plaintiff has failed to produce [any] competent record evidence demonstrating that defendant's decision to discharge plaintiff was pretextual." *Mora v. Univ. of Miami*, 15 F. Supp. 2d 1324, 1337 (S.D. Fla. 1998) (granting summary judgment); *Siudock v. Volusia Cty. Sch. Bd.*, 568 F. App'x 659, 664 (11th Cir. 2014) (affirming grant of summary judgment on retaliation claim where plaintiff "present[ed] no evidence, other than his own unsupported belief, that these reasons were pretextual"). Although the Court must construe all evidence and inferences therefrom in the light most favorable to the nonmovant, the Court is not required to "accept allegations which are completely unsupported by the record." *White v. Georgia*, 380 F. App'x 796, 798 (11th Cir. 2010). Accordingly, summary judgment is **GRANTED** to SouthernAg on West's retaliation claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 31) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Summary judgment is **GRANTED** on West's claims for compensation for all on-call time and for retaliation. Summary judgment is **DENIED** on West's claims for unpaid overtime compensation for hours actually worked and for liquidated damages. A genuine issue of material fact remains as to whether or not West was exempt from the FLSA; thus, a jury must determine this and any related remaining issues.

**SO ORDERED**, this   27th   day of April 2018.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

he had at Southern Ag and that his current employer is the "same" type of company as Southern Ag, "tractor-trailer transportation" (Doc. 32-2 at 11:6-9, 12:23-13:4.)